IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ALLISON SHARETTE BRITT, # 272290, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:14cv125-WKW |
| ) | (WO) |
| FRANK ALBRIGHT, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court on a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by Alabama inmate Allison Sharette Britt ("Britt"). After careful review, the undersigned finds that Britt is not entitled to habeas relief and that her petition should be denied without an evidentiary hearing. Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

**I. BACKGROUND**

In April 2009, a Houston County grand jury indicted Britt for attempted murder, in violation of §§ 13A-6-2 and 13A-4-2, Ala. Code 1975. The case went to trial in April 2010. The Alabama Court of Criminal Appeals summarized the trial evidence:

> At trial, the State presented evidence that in February 2009, the intended victim, Tabitha Walker, lived in an apartment with her [ ]-month-old daughter, [ ], in Dothan, Alabama. In the early morning hours of February 13, 2009, Walker's best friend, Carolyn Willoughby, walked to Walker's apartment after getting into an altercation at the G-Spot Club. Around 3:00 a.m. or 4:00 a.m., Walker heard Allison Britt kicking and beating on the door to her apartment, yelling profanities at Walker, and telling her that she was going to die. Walker testified that she easily recognized Britt's voice.

Around 6:00 a.m., Walker's grandmother came over, and while Walker and her grandmother were outside in the yard, Britt came back to the apartment in a white Grand Prix automobile. Britt got out of the car and began yelling profanities at Walker and her grandmother, so Walker called the police again. After Walker called the police, Britt got back in the car and drove away. Willoughby told Walker about the incident that occurred at the club and indicated that she believed that was the reason why Britt came over to the apartment.

Around 9:00 a.m. on the same morning, Britt returned to Walker's apartment as a passenger in a gray Kia automobile. Britt remained inside the car, but continued yelling at Walker. Britt then drew a weapon and shot at Walker with a "long gun" approximately six times. Walker ran inside to call the police.

Shaneca Walker, Tabitha Walker's sister, testified that she came over to her sister's apartment the morning of the incident. Shaneca was outside of the apartment when she saw Britt drive up in the backseat of a gray car. Britt yelled at Tabitha before pulling a gun and shooting at them.

Carolyn Willoughby stated that Britt beat on the door and yelled at Walker that they "were fixing to come get [her],"and that Willoughby and Walker hid in the closet after calling the police.

Willoughby was also present when Britt returned to the scene and yelled at Walker's grandmother, as well as when she returned for the third time in the gray Kia with a gun. Willoughby stated that once Britt began shooting, everyone was screaming, yelling, and running, and that Willoughby immediately ran inside the house where they called the police. Willoughby stated that she actually saw Britt with the gun.

Officer Bennie Ketchum, with the City of Dothan Police Department, testified that on February 13, 2009, he was called to Walker's house at approximately 7:30 a.m. because Britt had driven by the residence and yelled profanities at Walker and other individuals at the residence. Around 10:00 a.m., Officer Ketchum went back to the scene. Walker and her family and friends told Officer Ketchurn that Britt's vehicle had stopped in front of the house, and that Britt had fired at them with a semi-automatic rifle. Officer Ketchum noted a blue Buick Roadmaster parked in the driveway that had several bullet holes in it.

Investigator Robert Cole, with the Dothan Police Department, went to Walker's apartment where he observed two vehicles in the front yard and three spent shell casings near the curb. After interviewing Willoughby, Walker, and others at the scene, he determined that Britt was the individual who had fired the gun from the backseat of the driver's side of the vehicle. Based on this information, Investigator Cole put out a BOLO for Britt and the gray Kia. The following day around 1:30 a.m., he received a call that Sergeant Tim Odom, with the Dothan Police Department, had located the vehicle approximately 200 yards from Walker's apartment. From the outside of the vehicle, Cole could see two spent rounds inside the vehicle. Photographs of the spent shells and vehicle were taken, and the car was later towed to the police department. Cole subsequently obtained a search warrant for the vehicle.

Officer Jon Thomas, a Crime Scene Technician with the Dothan Police Department, went to the scene along with Officer Handley. He observed two cars in the driveway and some shell casings that had been marked. Officer Thomas took photographs of the scene and observed that there were three bullet holes in the Buick Roadmaster parked in the driveway. He also found a bullet hole in one of the house shutters and another in the roof. A photograph of the window also showed that the bottom pane was shattered, and there were two bullet holes in the top pane. Officers recovered 7.62mm shell casings from the scene and stated that those types of shells are generally fired from an assault rifle. Thomas also took photographs of the Kia, which depicted a 7.62mm shell casing found in the car along with a 20-gauge shotgun shell. He also identified the other two 7.62mm shell casings. The photographs also showed a second unfired shotgun shell and two kitchen-style knives that were found under the driver's seat. A swab from the rear passenger seat on the driver's side was positive for the presence of gunshot residue. Thomas identified the shell casings taken from Britt's car and stated that they were the same type of casings that he recovered from the scene at Walker's house.

The Defense presented evidence that Sharon Britt Smith, Britt's sister, got involved in an altercation with Willoughby at the club on the night of February 12th. Smith, however, stated that she did not tell Britt about the incident until later the next morning, and she was not with Britt at 4:00 a.m. on the 13th when it was alleged that Britt went over to Walker's apartment.

Shantelle Hudson testified that Sharon Britt Smith lived with her, her boyfriend, Michael Cooper, and Kasheen Bolden. She said that Smith came home around 2:30 to 3:00 a.m. on February 13th with minor injuries. Hudson

3

>indicated that Smith did not leave the house that morning before 4:00 a.m. and left the house to go to work around 8:00 that morning, and came back home around 8:45 or 9:00 a.m.
>
>O'Bryant Brown, the brother of Britt's fiance, testified that he saw Britt around 6:00 a.m. on February 13, 2009, and that Brown testified that Britt could not have been in Dothan at 9:00 a.m. because she was at his house around 6:00 a.m.

Doc. No. 5-6 at 2-4.

On April 21, 2010, the jury found Britt guilty of attempted murder as charged in the indictment. On May 19, 2010, the trial court sentenced her to 20 years in prison.

Britt appealed, asserting the following claims:

1. The evidence was insufficient to sustain her conviction for attempted murder; specifically, the State failed to present sufficient evidence that she was shooting at the intended victim.

2. The trial court erred in denying her motion for a new trial based on newly discovered evidence that a State's witness gave perjured testimony.

Doc. No. 5-4 at 13, 28-40.

On February 18, 2011, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed Britt's conviction and sentence, ruling against her on the merits of her claims. Doc. No. 5-6. Britt applied for rehearing, which was overruled on March 18, 2011. Doc. No. 5-7. She filed a petition for writ of certiorari with the Alabama Supreme Court, which denied the petition on August 5, 2011. Doc. No. 5-8.

On August 4, 2011, Britt filed this petition for writ of habeas corpus under § 2254, presenting the following claims:

4

      1.      The State's evidence was insufficient to sustain her conviction.

      2.      A State's witness gave perjured testimony claiming to be present when the shooting took place.

      3.      The trial court erred in denying her motion for a new trial based on newly discovered evidence that no shell casings were retrieved "near the porch where the witnesses alleged to be at the time of the shooting."

      4.      The intended victim "refused to answer [a] question appropriately" when testifying at trial.

Doc. No. 1 at 7-10.

## II. DISCUSSION

**A.   Claims Adjudicated on Merits by State Courts**

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief." *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010). To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts

5

"materially indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404-06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407. "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or ... could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

    Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented

in the State court proceeding." 28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### 1. *Sufficiency of the Evidence*

Britt contends that State's evidence was insufficient to sustain her conviction for attempted murder and showed only that she "discharg[ed] a firearm into an unoccupied building and/or vehicle."  Doc. No. 1 at 8.  Britt presented this claim to the trial court and pursued it throughout the direct-appeal process.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." *In re Winship*, 397 U.S. 358, 364 (1970).  Habeas relief on the merits of a claim of legally insufficient evidence is appropriate under § 2254 only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

> [T]his inquiry does not require a court to "ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt." ... [I]nstead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson,* 443 U.S. at 318-19.  To be sufficient, the "evidence need not exclude every

reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984). Sufficiency claims are judged by the elements of the offense defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In addressing the sufficiency of the evidence to sustain Britt's conviction for attempted murder, the Alabama Court of Criminal Appeals stated, in pertinent part:

> Section 13A-6-2, Ala. Code 1975, states, in pertinent part:
>
> > "(a)  A person commits the crime of murder if he or she does any of the following:
> >
> > > "(1) With intent to cause the death of another person, he or she causes the death of that person or of another person..."
>
> Further, § 13A-4-2, Ala. Code 1975, provides:
>
> > "(A)  A person is guilty of an attempt to commit a crime if, with the intent to commit a specific offense, he does any overt act towards the commission of such offense."
>
> Regarding the sufficiency of the State's evidence to support a conviction, this Court has repeatedly held:
>
> > "In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. *Cumbo v. State*, 368 So. 2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. *Gunn v. State*, 387 So. 2d 280 (Ala. Cr. App.), cert. denied, 387 So. 2d 283 (Ala. 1980) . The trial court's denial of a motion for a judgment of acquittal must be reviewed

> by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. *Thomas v. State*, 363 So. 2d 1020 (Ala. Cr. App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. *Willis v. State*, 447 So. 2d 199 (Ala. Cr. App. 1983); *Thomas v. State*. Then the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. *Young v. State*, 283 Ala. 676, 220 So. 2d 843 (1969); *Willis v. State*."

*Breckenridge v. State*, 628 So. 2d 1012, 1018 (Ala. Crim. App. 1993)

"'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' *Faircloth v. State*, 471 So. 2d 485, 489 (Ala. Cr. App. 1984), affirmed, *Ex parte Faircloth*, [471] So. 2d 493 (Ala. 1985)."

> ....
>
> Further,
>
> "'[i]ntent, ... being a state or condition of the mind, is rarely, if ever, susceptible of direct or positive proof, and must usually be inferred from the facts testified to by witnesses and the circumstances as developed by the evidence.' *McCord v. State*, 501 So. 2d 520, 528-529 (Ala.Cr.App. 1986), quoting *Pumphrey v. State*, 156 Ala. 103, 47 So. 156 (1908)."

*French v. State*, 687 So. 2d 202, 204 (Ala. Crim. App. 1995), aff'd in part, rev'd in part on other grounds, 687 So. 2d 205 (Ala. 1996)

> "'The question of intent is hardly ever capable of direct proof. Such questions are normally questions for the jury. *McMurphy v. State*, 455 So. 2d 924 (Ala. Crim. App. 1984); *Craig v. State*,

9

>    410 So. 2d 449 (Ala. Crim. App. 1981), cert. denied, 410 So. 2d
>    449 (Ala. 1982).' *Loper v. State*, 469 So. 2d 707, 710 (Ala. Cr.
>    App. 1985)."
>
> *Oryang v. State*, 642 So. 2d 989, 994 (Ala. Crim. App. 1994).
>
>    [Here], the State, through testimony and physical evidence, established that Britt came to Walker's residence on three separate occasions on the morning of February 13th. Each time, Britt yelled profanities at Walker, threatened to "get her" (R. 71, 73), and eventually fired multiple shots at her from an assault rifle. Based on the foregoing, the State presented sufficient evidence to sustain Britt's conviction for attempted murder. Furthermore, "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury.*" Smith v. State*, 698 So. 2d 189, 214 (Ala. Crim. App. 1996), aff'd, 698 So. 2d 219 (Ala. 1997). Therefore, Britt's argument is without merit.

Doc. No. 5-6 at 4-8.

The state-court decision was neither contrary to, nor an unreasonable application of, clearly established federal law, *see* 28 U.S.C. § 2254(d)(1), nor did it involve an unreasonable determination of the facts in light of the evidence presented, *see* 28 U.S.C. § 2254(d)(2). The record reflects that the State presented evidence establishing every element of the offense of attempted murder, as defined by §§ 13A-6-2 and 13A-4-2, Ala. Code 1975. There was ample evidence to support the inference that Britt, when firing multiple shots from an assault rifle at Walker as Walker stood in front of her residence, did so with the intent to kill Walker. A rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime of attempted murder beyond a reasonable doubt. *See Jackson,* 443 U.S. at 318-19. Consequently, Britt is not

entitled to habeas relief on her claim.

### 2. *Perjured Testimony from State's Witness*

Britt contends that State's witness Shaneca Walker, sister of the intended victim Tabitha Walker, gave perjured testimony that she (Shaneca) was present at the scene when the shooting took place. Doc. No. 1 at 7.

Britt presented this claim to the trial court in a motion for new trial based on newly discovered evidence. *See* Doc. No. 5-1 at 33-35. Specifically, she submitted an affidavit from Latasha Bryant stating that Shaneca Walker could not have been present when the shooting took place because she was with Bryant at that time, at a different location. *Id*. at 35. The trial court denied Britt's motion for new trial, and Britt pursued her perjured-testimony claim through the direct-appeal process.

"In order for perjury by a witness to constitute grounds for the grant of a habeas corpus writ it would have to be shown that the state knowingly used the perjured testimony." *Skipper v. Wainwright*, 598 F.2d 425, 427 (5th Cir. 1979). A petitioner seeking habeas relief on the ground that the prosecution's case included perjured testimony "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material – i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006) (per curiam) (quotation marks, alterations, and citation omitted).

In holding that Britt's perjured-testimony claim entitled her to no relief, the Alabama

Court of Criminal Appeals found:

> Initially, this Court notes that:
>
>> """The appellate courts look with disfavor on motions for new trials *based on newly discovered evidence* and the decision of the trial court will not be disturbed absent abuse of discretion." Further, "this court will indulge every presumption in favor of the correctness" of the trial judge's decision. The trial court is in the best position to determine the credibility of the new evidence.""''
>
> *Isom v. State*, 497 So. 2d 208, 212 (Ala. Crim. App. 1986).
>
> "'To establish a right to a new trial based on newly discovered evidence, the [appellant] must show the following: (1) that the evidence will probably change the result if a new trial is granted; (2) that the evidence has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; and (5) that it is not merely cumulative or impeaching.
>
> *Ex parte Heaton*, 542 So. 2d 931, 933 (Ala. 1989)
>
> In her brief to this Court, Britt concludes, with little to no explanation, that she met all the elements listed above and that she is entitled to a new trial. However, at least two other individuals testified to the same version of events as the witness in question. Furthermore, Walker's sister, Tabitha, and their friend Willoughby each identified Britt as the shooter. As such, Shaneca Walker's testimony was merely cumulative and, thus, impeaching her would not have altered the outcome of the trial. Consequently, the circuit court did not abuse its discretion in denying Britt's motion for a new trial. *See Ex parte Willingham*, 695 So. 2d 148, 150 (Ala. 1996) ("'[Willingham] has failed to establish that the new evidence is anything more than impeachment evidence and that the outcome of his trial court would be difference if the jury had been exposed to this evidence. Therefore, we cannot hold that the trial judge abused his discretion in denying [Willingham] a new trial based on alleged newly discovered evidence.'").

Doc. No. 5-6 at 9-10.

The record supports the appellate court's finding that other witnesses testified to the same version of events as Shaneca Walker. The matters alleged in the affidavit of Latasha Bryant submitted by Britt with her motion for new trial would have, at most, impeached testimony by Shaneca Walker cumulative of testimony by other trial witnesses and would not have had a reasonable likelihood of altering the outcome of the trial. *See Davis*, 465 F.3d at 1253. The state-court decision denying Britt relief on her perjured-testimony claim was neither contrary to, nor an unreasonable application of, clearly established federal law, nor did it involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). As such, Britt is not entitled to habeas relief on this claim.

**B.     Procedurally Defaulted Claims**

In her § 2254 petition, Britt presents two claims she never presented in the state courts: (1) that the trial court "erred in denying [her] motion for new trial based on "newly discovered evidence" that no shell casings were retrieved "near the porch where the witnesses alleged to be at the time of the shooting" (Doc. No. 1 at 7);[1] and (2) that the intended victim, Tabitha Walker, "refused to answer [a] question appropriately" when testifying at trial (*id*. at 9). Although she implies in her wording of the first of these two claims that her motion for new trial raised a claim about shell casings not being recovered

---

[1] This court would be hard put to find an explanation how the lack of shell casings near the porch of the residence could constitute newly discovered evidence when there is no dispute that a shooting incident took place and there was no trial testimony that shell casings were found near the porch. The State's evidence indicated that Britt fired at the residence from the back seat of a car that pulled into the driveway of the residence. Britt acknowledges that shell casings were recovered near the curb in front of the residence and from inside the car she allegedly fired from. *See* Doc. No. 1 at 7.

near the porch of the residence where the shooting took place, a review of her motion for new trial reveals that it contains no mention of shell casings. The only "newly discovered evidence" alleged in that new-trial motion concerns the allegation by Latasha Bryant in her affidavit that Shaneca Walker testified falsely that she was present when the shooting incident took place. *See* Doc. No. 5-1 at 33-34. In her habeas claim that Tabitha Walker "refused to answer a question appropriately," Britt points to Walker's statement, when asked on cross-examination if she thought Britt was attempting to kill her when she shot at her, "I don't know. You got to ask her that." *See* Doc. No. 5-2 at 48. There was no objection at trial to this statement by Walker.

Before a § 2254 petitioner may obtain federal habeas corpus review, she must exhaust her federal claims by raising them in the appropriate court, giving the state courts an opportunity to decide the merits of the constitutional issue raised. *See* 28 U.S.C. § 2254(b)(1) & (c); *Duncan v. Walker*, 533 U.S. 167, 178-79 (2001). To exhaust a claim fully, a petitioner must "invok[e] one complete round of the State's established appellate review process.*" O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Alabama, a complete round of the established appellate review process includes an appeal to the Alabama Court of Criminal Appeals, an application for rehearing to that court, and a petition for discretionary review – a petition for a writ of certiorari – filed in the Alabama Supreme Court. *See Smith v. Jones*, 256 F.3d 1135, 1140-41 (11th Cir. 2001); Ala.R.App.P. 39 & 40. "[I]f the petitioner failed to exhaust state remedies and the court to which the petitioner would be

required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred[,] ... there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (citations omitted); *see Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003).

Britt, who, as noted, raises the claims for the first time in her § 2254 petition, plainly failed to exhaust her shell-casing and inappropriate-answer claims in the state courts. Moreover, it is obviously too late for her to return to the state courts to litigate these claims for the first time. Consequently, the two claims are procedurally defaulted for purposes of federal habeas. *Coleman*, 501 U.S. at 735 n.1; *Henderson*, 353 F.3d at 891.

A habeas petitioner can escape the procedural-default doctrine either through showing cause for the default and prejudice, *Murray v. Carrier*, 477 U.S. 478, 488 (1986), or establishing a "fundamental miscarriage of justice," which requires a colorable showing of actual innocence, *Schlup v. Delo*, 513 U.S. 298, 324-27 (1995).

Cause for a procedural default must ordinarily turn on whether the petitioner can show that some objective factor external to the defense impeded efforts to comply with the state's procedural rules or that the procedural default resulted from ineffective assistance of counsel. *Murray*, 477 U.S. at 488; *United States v. Frady*, 456 U.S. 152, 170 (1982). To establish prejudice, a petitioner must show that the errors at trial worked to her actual and substantial disadvantage, "infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170; *see Murray*, 477 U.S. at 494.

15

Prisoners asserting actual innocence as a gateway to review of defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327. This standard "is demanding and permits review only in the 'extraordinary' case."[2] *House v. Bell*, 547 U.S. 518, 538 (2006). A petitioner must show "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998).

Here, Britt does not attempt to demonstrate cause for her failure to present her defaulted claims to the state courts in compliance with applicable procedural rules. Nor does she attempt the showing of actual innocence required to overcome her procedural default. Consequently, her procedurally defaulted claims are foreclosed from federal habeas review.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

---

[2] As the Supreme Court observed in *Schlup*:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

513 U.S. at 324.

It is further ORDERED that the parties shall file any objections to this Recommendation **on or before May 26, 2016.** A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 12th day of May, 2016.

      /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE